IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICKY LEE STOCKTON, | | |
|     Petitioner, | No. CIV S-02-0934 DFL GGH P | |
| vs. | | |
| ANTHONY LAMARQUE, et al., | | |
|     Respondent. | FINDINGS AND RECOMMENDATIONS | |
| _____/ | | |

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction for auto theft (Cal. Veh. Code § 10851(a)) for which he is serving a sentence of 25 years to life pursuant to the Three Strikes Law. Petitioner raises one claim: his sentence violates the Eighth Amendment. After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

    The AEDPA applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in

assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is

contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Discussion

The factual background of petitioner's offense is summarized in the opinion of the California Court of Appeal. Because the parties do not dispute this summary, it is adopted below:

> On January 19, 1999, a police officer saw defendant trapped in a snow bank in a stolen car. Defendant attempted to flee, pulling onto the highway in front of an approaching school bus. The police officer pursued. Defendant allowed a female passenger to get out of the car. He then ran stop signs, drove into a lane of oncoming traffic, and ultimately abandoned the car while it was still moving. A police officer jumped into the car to stop it. The entire pursuit occurred in less than a mile.
>
> Although the female passenger told the police defendant had said he stole the car, defendant claimed it was borrowed. He admitted injecting methamphetamine before the pursuit. Ultimately, defendant entered a no contest plea to auto theft. (Veh. Code, §10851.) The court found defendant had suffered two serious felony convictions within the meaning of Penal Code section 667, subdivisions (b) through (I).

Answer, Exhibit B, p. 2.

In sentencing petitioner, the trial court discussed petitioner's criminal history:

3

1         Court: ...Mr. Stockton has close to a 20-year criminal history that I would–although I don't know this, I would venture to guess that there probably may have been some juvenile history there, but his first recorded entry before the Court is a 12020, a felony, which occurred in 1979 in Siskiyou County. That was possession of a dangerous weapon. While not a violent felony, certainly a willingness to possess a dangerous or deadly weapon doesn't bode well for lack of criminality, because it certainly expresses, I suppose, an intent to perhaps use that weapon in appropriate cases.

        He was then placed on probation for a period of three years, and within a very short period of time, that probation was revoked and he was sent to state prison for a period of 16 months.

        His next felony occurred in 1980. I suspect that may have been the basis for the probation revocation, and interestingly, he was convicted of a 32 PC, but the crime he was an accessory to [sic] a robbery. So in the Court's view, this is another offense that suggests some willingness to be at least an associate of violent conduct. I don't know what the extent of his accessory conduct was, but the fact that he was convicted of that offense is not something that the Court takes lightly.

        Then he was sent to state prison for 16 months, apparently was released sometime after his commitment in February of '81, and very shortly thereafter, was back before the Court again in November of 1982, in which he committed an offensive burglary. I'm trusting that that's burglary in the second degree since it wasn't alleged as a strike. He received two years in the state prison. He was paroled in February of '84, and once again within a fairly short period of time was sent back on a parole violation.

        And then in 1989 he had the two counts of robbery for which he was sent to state prison for five years. After being released from prison, he was returned once again on a parole violation.

        He then had the felony burglary that you spoke about for which he was given concurrent time out of Washoe County.

        Mr. Rogers [Defense Counsel]: Actually, Judge, it was consecutive.

        Court: Was it consecutive?

        Mr. Rogers: It was consecutive, but it occurred in 1989. And if it's appropriate, I can submit for the record the copy of the judgment and information if it's essential.

RT at 40-42, lodge September 8, 2004.

        The two prior convictions on which the strikes were based were for robbery. RT at 17. While the specific background of these offenses is not contained in the record, they were discussed at petitioner's sentencing hearing. According to petitioner's counsel, these convictions

4

arose out of the same incident. RT at 22. Petitioner's counsel stated, "From what I can tell in looking through his history is that these are the only crimes of a violent nature that he has been involved in or committed. Other matters he has are mostly thefts." RT at 22. As discussed above, petitioner was sentenced to five years in state prison for these prior robbery convictions.

Petitioner initially relies upon Andrade v. California, 270 F.3d 743, 747 (9th Cir. 2001), to argue that his sentence constitutes cruel and unusual punishment because the crime underlying his present offense auto theft is a "wobbler" that can be charged as either a felony or a misdemeanor. He asserts that this crime did not involve violence and also that his prior convictions for robbery were unarmed and stemmed from a single incident.

Petitioner's initial reliance on Andrade is misplaced. Andrade was reversed by the Supreme Court in Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003). In that decision, the Court established that although a sentence that is "grossly disproportionate" to the crime committed violates the Eighth Amendment prohibition against cruel and unusual punishment, state legislative policies directed to the problem of criminal recidivism are an important factor and are entitled to great deference in weighing the "gravity of the offense" for which an enhanced sentence is given under state repeat offender laws. Id. at 72. Deference given to state recidivism policies in Eight Amendment cases, however, is not unlimited. Id. And in some "exceedingly rare" and "extreme case[s]," sentences validly imposed under a state recidivism statute may still violate the Eighth Amendment. Id.

It is only necessary to review Ewing v. California, 538 U.S. 11, 123 S. Ct. 1179 (2003) and Lockyer to understand that petitioner's claim herein is without merit. Each case involved an Eighth Amendment challenge after the sentences for relatively minor offenses were greatly enhanced pursuant to state repeat offender laws. They also involved enhanced sentences that mandated a minimum term of imprisonment by reason of the defendant's repeat offender status that was higher than the maximum prison term that could have been imposed for the same crime as a first offense. In each of these cases, the Supreme Court first found that the "gross

disproportionality" standard was the applicable legal standard.  Next, the Court reasoned that the "gravity of the offense" for which the enhanced sentence was imposed must be assessed under the Eighth Amendment, not only by reference to the nature and severity of the triggering offense, but also by reference to the state's recidivism policy, as expressed in the state's repeat offender statutes, and to the totality of the offender's criminal history.

In Lockyer and Ewing, the Supreme Court affirmed California Three Strikes Law sentences for two "career criminals" with lengthy criminal histories and triggering offenses that repeated their prior crimes.  In Lockyer, a federal habeas proceeding, the defendant was convicted of two felony counts of petty theft with a prior conviction and sentenced to two consecutive terms of 25 years to life.  Andrade's criminal history included the following activities: multiple counts of burglary, for which he was sentenced 120 months in prison; misdemeanor theft, for which he was sentenced to six days in jail with a year of probation; transportation of marijuana, for which he was sentenced to eight years in federal prison; misdemeanor theft, for which he was sentenced to 180 days in jail; and transportation of marijuana, for which he was sentenced to 191 days in federal prison.  He was also arrested for a state parole violation arising from his escape from federal prison.  The Supreme Court held that because "the precise contours" of the gross disproportionality principle were "unclear" the state court did not make an objectively unreasonable application of clearly established federal law. Lockyer, 538 U.S. at 68-70.

In Ewing, a direct appeal case, the Supreme Court affirmed the state court's upholding of Ewing's sentence of 25 years to life in prison.  Ewing, 538 U.S. at 29-30.  The triggering offense for Three Strikes Law purposes was grand theft of $1,200 of merchandise and was petitioner's fifteenth conviction for which he had previously served nine separate terms of incarceration.  Id. at 18.  Petitioner's criminal history evidenced a pattern of increasing violence. While noting that Ewing's triggering offense of grand theft "was certainly not one of the most passive felonies a person could commit . . . .  In weighing the gravity of Ewing's offense, we must

place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." Id. at 28-30.  After careful consideration of Ewing's triggering offense, along with his long, violent criminal history, the Court ruled that Ewing's sentence did not raise an inference of gross disproportionality.  Id. at 30.

In light of these two cases, petitioner's sentence is not grossly disproportionate to the crime committed for Eighth  Amendment purposes in light of his criminal history. Petitioner's two prior convictions were for robbery.  As did the defendants in Ewing and Lockyer, petitioner has a lengthy criminal history, and he has been incarcerated several times.

In a recent case decided post Lockyer and Ewing, the Ninth Circuit found that the 25-year-to-life sentence under the Three Strikes Law was unconstitutional where imposed for a third offense of shoplifting a $199 VCR and the petitioner's prior criminal history consisted solely of two convictions for second-degree robbery upon a single guilty plea.  Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004).  The federal appellate court held that these facts constituted one of those "exceedingly rare" cases, referenced in Lockyer v. Andrade, supra, in which the sentence imposed was grossly disproportionate.  Ramirez, 365 F.3d at 756-57.  Prosecutors in the 1996 charge used two nonviolent shoplifting offenses committed in 1991 to which petitioner had pled guilty for which he had served one sentence of just over six months in county jail to charge petitioner with one count of petty theft with a prior theft-related conviction, punishable as a felony, after which the jury found the 1991 convictions were strikes.  Id. at 756.  Although the trial court, pre-trial, had indicated an inclination to do so, it denied Ramirez's motion to strike one or both of the two prior shoplifts.  Id.  The 25 year-to-life sentence imposed for three shoplifting convictions, the Ninth Circuit noted, was more severe than that which would have been imposed if any of the crimes had been murder, manslaughter or rape.  Id.

Ramirez pled guilty to the two earlier shoplifting offenses, unaware that he was putting two strikes on his record, since the Three Strikes Law had not yet been enacted.  Id. at

757. He took the plea for a one year sentence in county jail and three years probation after having allegedly been told that his failure to do so would result in his sister, also implicated in one of the shoplifts, being sentenced to five years in prison. Id. Ramirez served six months and twenty days, was released and completed probation without incident. Id. Ramirez had no encounters with the law until the third shoplifting offense several years later in which no force or violence was associated; minimal force was associated with the prior offenses. Id. at 757-58. Ramirez could have been charged with a misdemeanor petty theft and sentenced to a maximum of six months in jail. Id. at 758. Ramirez, unlike the recidivists in Rummel, Solem, Ewing and Andrade, (and unlike petitioner herein) had never been sentenced to state prison, and in his entire criminal history, had only served one period of incarceration in county jail. Id., at 769. Finding Ramirez's case to constitute one of "the extremely rare case that gives rise to an inference of gross disproportionality,...." the court proceeded to a comparative analysis of his sentence, intra and inter jurisdictionally. Id ., at 770-773. The state court was ultimately found to have unreasonably applied the gross disproportionality principle to the "unique facts of Ramirez's case." Id., at 774.

        In light of Lockyer and Ewing, petitioner's sentence herein could only be found to be grossly disproportionate to the crime committed for Eighth Amendment purposes if the facts of his case were sufficiently analogous to those of the "extremely rare" case identified in Ramirez. Favoring petitioner is that the two prior strikes for which his sentence was enhanced involve, as did Ramirez's, a single proceeding, and, even more favorable for petitioner herein, petitioner's two counts apparently occurred on the same day as part of essentially the same incident,[1] while Ramirez was pleading to two separate shoplifting incidents, occurring on two

---

[1] As noted by the Ramirez court, "for purposes of a Three Strikes sentence, '[t]he fact that [the defendant's] prior convictions were adjudicated in a single proceeding does not mean that they constitute one prior conviction; two strikes can arise from one case." Ramirez, supra, at 758 n.3, citing People v. Superior Court (Arevalos), 41 Cal. App.4th 908, 916, 48 Cal. Rptr.2d 833, 838 (1996).

distinct dates (one in January, 1991, the other in September of the same year) at two different stores.  Ramirez, supra, at 757.  In Ramirez, the Ninth Circuit emphasized as key factors favoring Ramirez that the prior convictions did not involve the use of a weapon and nor did they result in incarceration in state prison.  In the instant case, the record does not indicate whether petitioner's prior convictions involved use of a weapon.  However, by contrast to Ramirez, petitioner had a lengthy criminal history that included several prior prison terms.  The prior robbery convictions on which the strikes were based also involved a prior prison term.  Petitioner's criminal history does not demonstrate a criminal record sufficiently analogous to that of Ramirez to warrant habeas relief.

Accordingly, the state court's application of Supreme Court precedent was not "objectively unreasonable," and petitioner should not be granted habeas relief.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   7/6/05

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

stock934.157